STATE OF CONNECTICUT *v.* STEVEN T. WASHBURN
(12297)

FOTI, LAVERY and LANDAU, Js.

558

Argued February 15—decision released May 31, 1994

*David S. Grossman,* for the appellant (defendant).

*Jacqueline J. Footman,* assistant state's attorney, with whom were *Susan Marcu Naide,* assistant state's attorney, and, on the brief, *Frank S. Maco,* state's attorney, and *James Fletcher,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, following the denial of his motion to dismiss and entry of a nolo contendere plea,[1] of the crime of operating a motor vehicle while his operator's license

---

[1] The plea of nolo contendere was entered conditional on the right to appeal pursuant to General Statutes § 54-94a and Practice Book § 4003.

was under suspension, pursuant to General Statutes § 14-227b, in violation of General Statutes § 14-215 (c).[2]

The defendant argues that the judgment of conviction[3] should be reversed and the case remanded with direction to grant his motion to dismiss because (1) General Statutes § 14-215 (c), as applied, is a bill of attainder in violation of both the state and federal constitutions, (2) § 14-215 (c) violates the due process clauses of both the state and federal constitutions, (3) the enhanced penalty provisions of § 14-215 (c) violate the equal protection clauses of both the state and federal constitutions, (4) imposition of a jail term of not less than thirty days constitutes "unusual" punishment in violation of both the state and federal constitutions, and (5) the information was defective. We affirm the judgment of the trial court.

The defendant was arrested early in the morning on January 17, 1992, for operating a motor vehicle while under the influence of intoxicating liquor pursuant to General Statutes § 14-227a.[4] In accordance with General Statutes § 14-227b (c) his driver's license was revoked for a twenty-four hour period, and he was given a temporary license that became effective upon

---

[2] General Statutes § 14-215 (c) provides: "Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a or section 53a-56b or 53a-60d or pursuant to section 14-227b, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty consecutive days of which may not be suspended or reduced in any manner."

[3] The defendant received a sentence of six months, the execution of which was suspended after the mandatory minimum of thirty days was served, followed by a probationary period of two years with special conditions. In addition, a fine of $750 plus costs was imposed.

[4] According to the defendant, the charge of operating while under the influence of liquor or drug was eventually dismissed due to the defendant's participation in the alcohol education program.

the expiration of the twenty-four hour suspension. He was released from custody, and, later that same day, prior to the expiration of the twenty-four hour suspension, he was stopped in his vehicle by a police officer for an unrelated offense. No ticket was issued at that time and he was allowed to continue driving. Subsequently, the New Milford police department discovered that the twenty-four hour suspension period had not expired at the time of the stop. A warrant for his arrest was issued on March 3, 1992.

By information dated and filed May 8, 1992, it was alleged that "on or about the 17th day of January 1992 . . . Steven T. Washburn at approximately 5:30 p.m. did operate a motor vehicle on a public highway to wit: Route 7, while his operator's license or right to operate a motor vehicle in this State was suspended and revoked pursuant to General Statutes § 14-227b, all in violation of Connecticut General Statutes § 14-215 (c)." On the same day, the state's attorney filed the "second part of information" indicating that the defendant was "subject to enhanced penalty pursuant to General Statutes § 14-215 (c)." The defendant filed a motion to dismiss the charges,[5] along with a memorandum in support of that motion.

On appeal after a conditional plea of nolo contendere, the only issue to be considered is whether it was proper for the trial court to have denied the motion to dismiss. General Statutes § 54-94a; Practice Book § 4003.[6] The defendant's motion to dismiss was limited to two claims: (1) that the statute in question is a bill of

[5] We note that the motion to dismiss has not been included as part of the court file. The defendant's memorandum in support of his motion to dismiss was filed on July 17, 1992. The state filed a memorandum in opposition on August 7, 1992.

[6] The plea of nolo contendere, however, does not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. General Statutes § 54-94a; Practice Book § 4003.

attainder in violation of article one, § 10, of the United States constitution, and (2) that the provision that provides for the suspension of a driver's license for a twenty-four hour period violates procedural due process as required by the fourteenth amendment to the United States constitution. The state's memorandum in opposition and the trial court's memorandum of decision denying the defendant's motion addressed only the issues as raised by the defendant's motion to dismiss.[7]

I

The defendant argues that the application of General Statutes § 14-215 (c) to the twenty-four hour suspension provision of General Statutes § 14-227b[8] consti-

---

[7] After finding in its memorandum of decision that the defendant was arrested on January 17, 1992, on or about 1:38 a.m. for operating a motor vehicle while under the influence of intoxicating liquor pursuant to General Statutes § 14-227a, the trial court stated the following: "Upon failing to perform a series of standardized field sobriety tests to standard, the defendant was arrested and transported to the New Milford police department, where the results of two Intoximeter tests revealed a descending blood alcohol content of 0.124 and 0.114 of a percent."

The defendant argues, and we agree, that this "finding" is surplusage, and neither warranted nor needed for the determination of his motion to dismiss. No motion for rectification was filed.

[8] General Statutes § 14-227b provides in pertinent part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(c) If the person arrested . . . submits to such [blood alcohol] test or analysis and the results of such test or analysis indicates that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the commissioner of motor vehicles, *shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period* and shall issue a temporary operator's license . . . to such person valid for the period commencing twenty-four hours after issuance and ending thirty-five days after the date such person received notice of his arrest by the police officer. The police officer *shall* prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the department of motor vehicles . . . . *The report shall be . . .*

tutes a bill of attainder. He claims that when the punishment was imposed he had not been tried or convicted on the underlying charge of operating a motor vehicle while under the influence of intoxicating liquor. The defendant asserts that the class of persons affected is that clearly identifiable group of persons "stupid enough to drive within twenty-four hours following a prior arrest."

Bills of attainder are prohibited by article one, § 9, clause 3, and § 10, of the United States constitution.[9] A bill of attainder has been described as " 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.' " *Selective Service Systems* v. *Minnesota Public Interest Research Group,* 468 U.S. 841, 846–47, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984).[10] In order to constitute a bill of attainder, therefore, a law must do two things: (1) single out an individual or group for unfavorable treatment, and (2) impose punishment without judicial trial. *United States* v. *Lovett,* 328 U.S. 303, 315, 66 S. Ct. 1073, 90 L. Ed. 1252 (1946).

---

sworn to under penalty of false statement . . . . *The report shall set forth the grounds for the officer's belief that there was probable cause* to arrest such person . . . and shall state . . . that such person submitted to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight." (Emphasis added.)

[9] The defendant also argues that the application of General Statutes §§ 14-215 (c) to 14-227b constitutes a bill of attainder prohibited by article first, § 13, of the Connecticut constitution. Because the defendant has not provided an independent analysis to support his state constitutional claim, nor raised the state claim before the trial court, we will not review it. See *State* v. *Hernandez,* 204 Conn. 377, 394 n.9, 528 A.2d 794 (1987); *State* v. *Andrews,* 33 Conn. App. 590, 592 n.3, 637 A.2d 787, cert. denied, 229 Conn. 908, 640 A.2d 121 (1994).

[10] Traditionally, a bill of attainder imposed a death penalty; penalties less than death were imposed, typically, by a "bill of pains and penalties." The three principal incidents of attainder were forfeiture of property, corruption of blood, and civil death. 21 Am. Jur. 2d, Criminal Law § 1022 (1981).

We cannot conclude that the twenty-four hour suspension following an individual's arrest for operating while under the influence of intoxicating liquor meets the criteria set forth previously. General Statutes § 14-227b, Connecticut's "implied consent" statute applies to *all* drivers who operate motor vehicles in the state, and neither identifies nor implicates, by isolation, a smaller identifiable group within the general group of licensed drivers.

Simply because a law places burdens on citizens does not make those burdens punishment. *Selective Service Systems* v. *Minnesota Public Interest Research Group,* supra, 468 U.S. 851. In deciding whether a legislative act inflicts forbidden punishment, we must first determine (1) whether the statute imposes a punishment that falls within the historical meaning of legislative punishment, (2) whether, looking at the type and severity of burdens the statute imposes, it can be said to further nonpunitive legislative purposes, and (3) whether the legislative record clearly shows an intent to punish. Id., 852. In addition, it also has been considered useful to inquire whether less burdensome alternatives exist through which the legislature's legitimate objectives might have been achieved. *Nixon* v. *Administrator of General Services,* 433 U.S. 425, 482, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977).[11]

General Statutes § 14-227b does not impose a punishment in the historical sense, it can reasonably be said to further nonpunitive legislative purposes, and the legislative record does not evince an intent to punish.

---

[11] The trial court's thorough analysis focused on the second criteria—whether the law imposes a punishment "traditionally judged to be prohibited." *Nixon* v. *Administrator of General Services,* supra, 433 U.S. 475. The court also reviewed the functional test, the legislative motive and the less burdensome alternatives tests as set forth in *Nixon,* while recognizing that the historical test was inapplicable to the present case.

License revocation, pursuant to § 14-227b, is administrative rather than criminal in nature.[12] *Marshall* v. *DelPonte,* 27 Conn. App. 346, 351, 606 A.2d 716 (1992). The postarrest suspension is not punitive in its purpose or application. The purpose of such a twenty-four hour postarrest suspension is to protect the public from those who operate motor vehicles while under the influence of drugs or alcohol. The motivation of the legislature is clearly focused on public safety.

Section 14-215 (c) specifically refers to persons who have had their licenses suspended or revoked pursuant to §§ 14-227a (a), 14-227b, 53a-56b or 53a-60d, but does not impose punishment for past conduct.[13] The penalties under General Statutes § 14-215 (c) can be avoided by refraining from operating a motor vehicle for the required twenty-four hour period. We conclude, therefore, that the defendant is not a member of any discrete class that the legislature seeks to punish, nor has he been subjected to legislative punishment for conduct without the benefit of judicial trial. The trial court properly concluded that § 14-215 (c), applied together with § 14-227b (c), is not a bill of attainder.

II

The defendant next claims that application of the thirty day minimum mandatory jail term to the summary twenty-four hour suspension provisions of General Statutes § 14-227b (c) violates both state[14] and federal constitutional due process rights.

---

[12] The legislative scheme establishes two separate and distinct proceedings. The administrative suspension of an operator's license is under the jurisdiction of the department of motor vehicles and the prosecution of the underlying offense of driving while intoxicated falls within the jurisdiction of the criminal justice system.

[13] The legislative history of § 14-227b reveals that when the legislature passed that section, it also amended § 14-215 to include the words "or pursuant to section 14-227b," replacing the reference to only specific sections of § 14-227b.

[14] See footnote 9.

While a driver's license, as a property interest, may not be suspended or revoked without due process of law; *Bell* v. *Burson,* 402 U.S. 535, 542–43, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971); a presuspension hearing may not always be required. *Dixon* v. *Love* 431 U.S. 105, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977). To determine the level of procedural due process necessary or whether a prior evidentiary hearing may be required we must examine three factors: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedure used and the probable value, if any, of additional substitute procedural safeguards, and (3) the state's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews* v. *Eldridge,* 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Applying the *Eldridge* criteria to the present case, we conclude that the interest affected, i.e., the right to operate a motor vehicle, is not significantly infringed by a prohibition of twenty-four hours following an arrest for operating while under the influence of intoxicating liquor. It is a brief period and not an unreasonable restriction on the use and enjoyment of the driver's license; it is a regulation that is within reasonable limits.

The risk of an erroneous deprivation is rather low considering the other safeguards that exist. Ample safeguards have been enacted to ensure that a reasonably reliable basis exists and that the police action is responsible and warranted. General Statutes § 14-227b (c) requires that the person first be arrested and submit to and fail or refuse to submit to a blood alcohol test. The statute further directs the police officer to prepare and swear to a report detailing the probable cause for arrest. While this report is not reviewable in relation to the twenty-four hour administrative suspension,

there is ample chance for review prior to any further consequences to the arrested individual.[15] At the termination of the twenty-four hour suspension period, a thirty-five day temporary license issues immediately permitting that operator to resume driving his or her vehicle. He or she must have an opportunity for a hearing prior to the termination of the temporary license and prior to any further suspension of his or her license. General Statutes § 14-227b (d).[16]

Finally, the state's interest in promoting public safety must, in the circumstances of this matter, outweigh the defendant's claimed right to a hearing prior to the twenty-four hour suspension of his operator's license. "Connecticut's statutory scheme [reflects] an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers." *State* v. *Stevens,* 224 Conn. 730, 739, 620 A.2d 789 (1993). Public policy, in addition to the legislative regulation, dictates that public safety must take priority over an individual's right to a presuspension hearing under the circumstances.

We, therefore, conclude that General Statutes § 14-227b (c) does not violate federal due process by its application of a twenty-four hour suspension, but rather, is a valid enactment by the state in the exercise of its police power.

## III

The defendant also claims that he was subjected to an enhanced penalty pursuant to General Statutes

[15] The twenty-four hour suspension cannot be reversed even if improper. The intrusion is minor and the safeguard of a sworn statement sufficient to justify the intrusion.

[16] The issues at the presuspension hearing are limited to (1) whether there was probable cause for arrest, (2) whether such person was placed under arrest, (3) whether such person refused to submit to a blood alcohol test or submitted with results of ten-hundredths of one percent or more of blood alcohol by weight at the time of the alleged offense, and (4) whether such person was operating a motor vehicle. General Statutes § 14-227b (f).

§ 14-215 (c) in violation of the equal protection clause of the state and federal constitutions.

This issue was not raised by the defendant's motion to dismiss. We are not bound to consider a claim that was not distinctly raised at trial. Practice Book § 4185. "This rule applies to constitutional claims. Only under the most exceptional circumstances can and will [we] consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *Berry* v. *Loiseau,* 223 Conn. 786, 828, 614 A.2d 414 (1992). No exceptional circumstances have been asserted and, accordingly, we decline to review this claim.[17]

### IV

By way of a supplemental brief, the defendant raises for the first time two additional issues. He alleges that the imposition of a thirty day sentence constitutes unusual punishment in violation of the eighth amendment to the federal constitution and article first, § 8, of the state constitution, and that the information was defective in that it employed the term "privilege" rather than the proper term "right." For the reasons discussed in part III, we decline to review these claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] We are also unpersuaded by the defendant's reference at oral argument to *United States* v. *La Guardia,* 902 F.2d 1010, 1013 (1st Cir. 1990).