[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Facts
The defendant has moved to dismiss the charge of "operating under the influence" in violation of Conn. Gen. Stat. 14-227a contending that such prosecution would be in violation of herfifth and fourteenth Amendments Rights of United States constitution and under Article I section 8 of the Connecticut Constitution, "not to put twice in jeopardy for the same offense".
Discussion
The sole issue contested is whether an "administrative per se driver's license suspension of ninety days under C.G.S. 14-227b(h) qualifies as punishment for the purposes of double jeopardy?"[1]
The facts are undisputed by means of a stipulation that: the defendant's license was suspended for ninety days pursuant to 14a-227b(h) and she now faces criminal prosecution where the state seeks a conviction which could result in incarceration, fines andadditional suspension of her license.
The state by its arguments and brief has conceded that the administrative per se sanction was a separate proceeding for the same offense,[2] under the requirements of United States v. Halper,490 U.S. 435, 109 S.Ct 1892, 104 L.Ed.2d 487 (1989); Austin v.United States, 509 U.S. ___, 113 S.Ct. 2801, 125 L.Ed.2d 488, 1993 andDepartment of Revenue of Montana v. Kurth Ranch, 511 U.S. ___,114 S.Ct. 1937 (1994). CT Page 4226-A
The court made inquiry of the state whether it intended to raise theBlockbuster test and/or whether they challenged the defendant was not being punished for the same offense. The state declined to raise the issues. The court must agree with Judge Blue's conclusion inCovelli v. Crystal, supra at 151, that the United States Supreme Court was presented with the issue and summarily failed to mention the challenge in Kurth Ranch; and, therefore, is not applicable.
The Supreme Court has made it clear in the above, that ostensibly civil sanctions will be construed as punishments for double jeopardy purposes. United States v. Halper, supra (civil damages for the government); Austin v. United States, supra (civil land forfeiture);Dept. of Revenue of Montana v. Kurth, (tax assessment on drug transactions.)
However, originally the Court had not been as clear as to what test must be applied to determine when a civil sanction constitutes double jeopardy punishment.
The State argues that the Halper court meant that it would be a rare case when civil sanctions are deemed punishment and relies on the following: "What we announce now is a rule for the rare case . . . the rule is one reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss. . . ." (emphasis addedHalper supra, 1902.
The State contends that this means that any statute authorizing a civil sanction that in any way purports to or serves a remedial purpose should be sustained as nonpunishment for the purpose of the Fifth Amendment "double jeopardy".
Further, the State has submitted several other state decisions relying on the same analysis. See Johnson v. State, 95 Md. App. 561,622 A.2d 199, 204-205 (1993); Butter v. Department of PublicSafety and Corrections, 609 So.2d 790, 795-961 (La. 1992);State v. Strong, 605 A.2d 510, 512-514 (Vt. 1992); State v. Nichols,169 Ariz. 409, 819 P.2d 995, 998-1000, Ariz. App. 1991). Most of these decisions involve license suspensions due to statutes concerning operation of a motor vehicle while intoxicated (more commonly DWI). Further, these cases are almost identical factually due to the need to conform to federal requirements for state traffic enforcements rules for receiving federal funds. In each CT Page 4226-B instance the license suspensions were upheld as not punishment for double jeopardy.
The Strong court, supra, 513, illustrative of the others, reasoned that "the summary suspension scheme serves the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the road."
This court notes well that all of these decisions were written prior to the Austin and Kurth cases; which clearly restate the firstHalper inquiry on the issue of double jeopardy punishment.
"We said in Halper that `a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'" (emphasis added) Austin v. United States, supra, 2806, quotingUnited States v. Halper, supra, 1448. Fundamentally. . . `[a] civil sanction that cannot fairly be said solely to serve a remedial purpose but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term.'" Id., 2812, quoting United Statesv. Halper, supra 448.
"A defendant convicted and punished for an offense may not have a nonremedial civil penalty sanction imposed upon him for the same offense in a separate proceeding." Dept. of Revenue of Montanav. Kurth, supra, 1945, citing United States v. Halper, supra.
Since the Austin decision in June, 1993 it has been clear that the initial double jeopardy inquiry is whether a statute is solely
remedial and not retributive or punitive. The notion that double jeopardy violations would be rare appears to be a misstatement by the Supreme Court. The Court itself has written two decisions within a year of each other finding double jeopardy violations; and dozens of lower court decisions have barred subsequent criminal prosecutions or civil sanctions.
The test of whether a statute is solely remedial has not been made clear. In these decisions, "Halper recognized that `this constitutional right is intrinsically personal' and that only `the character of the actual sanctions; can substantiate a possible double jeopardy violation." Dept. of Revenue of Montanav. Kurth, supra, 1946, quoting United States v. Halper,
supra, 1901. "Whereas, fines, penalties and forfeitures are CT Page 4226-C readily characterized as sanctions, taxes are typically different. . . ." Id. "Yet, as the Chief Justice points out, tax statutes serve a purpose quite different from civil penalties, andHalper's method of determining whether exaction was remedial or punitive `simply does not work in the case of tax statute.' Id. 1948, quoting dissenting opinion (Rehnquist, CJ, dissenting).
The Kurth court then went on an unusual features analysis of the Montana Tax Statute and rejected the legislature's stated contention that a civil tax for compensation for government fighting the war on drugs was remedial.
In Austin a civil forfeiture of property used or intended to be used in drug offenses; was held as not payment to the government, but as punishment for some offense, even if the forfeiture served some remedial purpose. The Court did an exhaustive analysis of forfeiture historically and practically as being punitive in origin and action.
This court agrees with Judge Blue's reasoning in Covelli v. Crystal,
13 Conn. L. Rptr. No. 5,148 (Jan. 30, 1995) that the court must apply a "totality of circumstance" analysis on a case to case basis. This appears to be mandated by United States Supreme Court decisions. "Austin asks that we establish a multifactor test for determining whether forfeiture is constitutionally excessive." Id., 2812.
The Supreme Court has given guidance, but no set rule. "The notion of punishment, as we understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishments barred by the Double Jeopardy Clause, we must follow the notion where it leads." United States v. Halper,
supra, 1901. "Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state. Id. "[T]he determination . . . requires a particularized assessment of the penalty imposed and the purposes that the penalty may be fairly said to serve. Simply put, a civil as well as criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." Id., 1901-1902.
Further, the court has rejected the contention that if the legislative history states a purported purpose, it may be fairly rejected if its result is clearly punishment. We must look to the CT Page 4226-D entire scope of the statute, its stated purpose and legislative history, and how the machinery of governments actually works in the individual case. Halper, supra, 1901.
The Connecticut Appellate Court on one recent occasion has analyzed14-227b(c) the immediate 24 hour license suspension revocation and upheld it under a Bill of Attainder punishment test. State v.Washburn, 34 Conn. App. 557 (1994) (Double Jeopardy implications not discussed) There was clear dictum that the punishment was solely remedial to remove a presumptively drunk driver from the road and not for an excessive period. Id., 564.
The State contends this is akin to a finding that the 14-227b(c) license suspension given by the legislation is clearly focused on public safety and that 14-227b(h) is a mere extension of that accepted remedial purpose.
This court cannot agree; first, Washburn is not a double jeopardy analysis; second, the scope of the sanction is not comparable to the ninety day suspension contained in 14-227b(h) (clearly the 24 hour provision goes to prevent some one shown to [be] legally drunk or refusing the test to be kept off the roads for such a time that will assure that the individual has sobered up.)
The Court agrees that 14-227b(h) does have the laudable intent of taking our state roads safe, thus having some remedial purpose; however, after complete analysis of the legislative history, the mechanics of the statute, and how it is applied to individuals, this court concludes that the statute is punishment for double jeopardy purposes because its actual effects are those of deterrence and punitive qualities.[3]
Historically, the Connecticut Statute was derived from a model comprehensive statute to deal with drunk driving accidents and deaths that are the scourge of our highways. The Court is well aware that unless provisions such as 14-227b(h) are in the state laws, the state will be deprived of government funding for highway construction and other public safety purposes.
The defendant here has been able to provide the court with six state decisions on the identical issue of the administrative per se license suspension. Of course, all six have sustained their position.
This court does not accept at face value these decisions, but agrees in large part with their analysis and conclusions See, State ofCT Page 4226-EFlorida v. Ruby, 95 LWUSA 61 at 17 (Jan. 10, 1995); State of Idahov. Bumgardner, No. 94-00936, Memorandum (Jan, 1995); City ofSalena v. Baer, Municipal Court Salena, Kansas (Feb. 1995); Cityof Seattle v. Savaria, No. 21556 King County, State of Washington (Feb. 1995) (defendant's brief); State of Ohio v. Gustafson, 94 LWUSA 1177 at 17 (Dec. 19, 1994).
For a complete understanding of the intent of purposes of the administrative per se sanction, the court must analyze its origins. As previously stated most states have taken the federal governments requirements and have applied it to state law. Connecticut is no exception. In Public Act 89-314, the contested provisions of 14-227b(H) were incorporated into the statute. . . .
. . . The Legislative stated purpose is clearly meant in a large part to be punishment and deterrent. Further, a driver's license has been given such value as a constitutionally protected right which cannot be suspended or revoked without due process of law. State v. Washburn,
supra, 565, citing United States v. Brunson, 402 U.S. 535
542-43. (1977).
The Court is well familiar with the actual working of 14-227b(H) and other motor vehicle criminal charges that result license suspensions. In the thousands of pretrials conducted by the court, defense attorneys or pro se's resist the actual suspensions more than even short jail sentences or major fines. (i.e. the same 14-227a charge contested here).
Often, these are the most difficult cases to bring to a pretrial disposition. Defendants cannot bring themselves to accept losing their license; whether it is the thirty day suspension for a Reckless Driving conviction or the one year suspension of first time Operating Under the Influence conviction.
The reason is clear; the very livelihood of the person or their family may be dependent on their ability to operate a motor vehicle. A motor vehicle license can be more valuable than some time in jail, large fines or many hours of community service. As a practical matter, the court cannot reach any other conclusion than that 14-227b(h) as applied is a penalty and deterrent of great magnitude. A ninety day suspension would operate as a great hardship to any defendant and, therefore, they have been punished for the purpose of double jeopardy.
The Motion to Dismiss is granted due to the Constitutional Violation CT Page 4226-F of Double Jeopardy Protections.