[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 27, 1994 at 12:10 a.m., the defendant, Sally Fox, was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor (hereafter "OUI") in violation of Sec. 14-227a of the General Statutes as a result of CT Page 10785 erratic operation on Route I-84. Sobriety tests administered by members of the State Police in Newtown produced two breath samples. The first test revealed a blood-alcohol content (hereafter "BAC") of .326 percent and the second a BAC of .307 percent.
On January 5, 1995, an administrative officer conducted a per se license revocation hearing and rendered his decision against the accused (hereafter "Fox"). Thereafter, her privilege of operation was suspended for ninety (90) days. The officer's decision was predicated upon a finding under Sec. 14-227b of the General Statutes in that the state police had probable cause to arrest Fox; that she was indeed arrested; that her BAC exceeded .10 percent; and, that she operated the motor vehicle.
Fox has moved to dismiss the criminal prosecution and she postulates that by being subjected to an administrative suspension of her driving privileges and a subsequent criminal prosecution arising out of the same underlying conduct as the administrative action constitutes a violation of the double jeopardy clause and theory of the fifth amendment of the United States Constitution and Art. 1, Sec. 8 of the Connecticut Constitution respectively. In the most simple terms, she claims to being subjected to punishment twice for the same conduct.[1]
"The Fifth Amendment provides that `no person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb. . . .' U.S. Const., Amdt 5. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction and multiple punishments for the same offense. SeeNorth Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072,23 L.Ed.2d 656 (1969)." Montana Department of Revenue v. KurthRanch, 114 S.Ct. 1937, 128 L.Ed.2d 767, 773 n. 1 (1994). "In Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056,23 L.Ed.2d 707 (1969), we held that this guarantee `represents a fundamental ideal in our constitutional heritage,' and that it should apply to the States through the Fourteenth Amendment."Montana Department of Revenue v. Kurth Ranch, supra,128 L.Ed.2d 773 n. 1; see also State v. Woodson, 227 Conn. 1, 7, 629 A.2d 386
(1993) (discussing application of double jeopardy clause to the states). In the present case, Fox argues that the administrative suspension and subsequent criminal prosecution amount to multiple punishments that contravene the fifth amendment. CT Page 10786
In deciding the multiple punishment double jeopardy claim,[2] the court must examine three issues: (1) whether the "per se" and criminal court proceedings are separate; (2) whether the license suspension is a "punishment" in the double jeopardy sense; and (3) whether the "per se" proceeding is based on the same offense as the criminal prosecution. See generally MontanaDepartment of Revenue v. Kurth Ranch, supra, 128 L.Ed.2d 776-78;United States v. Halper, 490 U.S. 435, 436-39, 109 S.Ct. 1892,104 L.Ed.2d 487 (1989). The threshold consideration is the punishment criteria, for if the administrative suspension is not considered punishment, Fox's argument will fail.[3]
"In the Halper case, the Supreme Court determined that the label of `criminal' or `civil' may well have been a distinction without a difference and thus of little guidance in determining what exactly constitutes a `punishment.' The Court ruled that we should look to the goal of the sanction to see if it is solely to serve a remedial purpose or rather, is retributive or deterrent in purpose, which are more properly goals of punishment." Statev. Parenteau, Superior Court, Judicial District of Hartford, DN. 177550 (February 25, 1995) (Foley, J.), summarized at 1 Conn. Ops. 326, citing United States v. Halper, supra,490 U.S. 448.[4] "Halper recognized that `[t]his constitutional protection is intrinsically personal,' and that only `the character of the actual sanctions' can substantiate a possible double jeopardy violation." Montana Department of Revenue v.Kurth Ranch, supra, 128 L.Ed.2d 779, quoting United States v.Halper, supra, 490 U.S. 447.
However, "[t]his is not to say that whether a sanction constitutes punishment must be determined from the defendant's perspective. On the contrary, our cases have acknowledged that for the defendant even remedial sanctions carry the sting of punishment. See, e.g., United States ex rel. Marcus v. Hess,317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Rather, we hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." United States v. Halper, supra, 490 U.S. 447 n. 7.
In Parenteau, the court articulated the holding of KurthRanch as follows: that if a consequence is to be deemed a civil, non-jeopardy attaching action, it must be strictly remedial. If the proceeding is at all punitive the double jeopardy protection CT Page 10787 attaches, citing Montana Department of Revenue v. Kurth Ranch, supra, 128 L.Ed.2d 778. This court is satisfied that the purposes underlying Sec. 14-227b are remedial rather than punitive. A license revocation pursuant to Sec. 14-227b is an administrative, rather than a criminal proceeding. Marshall v. DelPonte,27 Conn. App. 346, 351. The Appellate Court has expanded that thesis by reciting that "General Statutes, Sec. 14-227b does not impose a punishment in the historical sense, it can reasonably be said to further nonpunitive legislative purposes, and the legislative record does not evince an intent to punish." State v. Washburn,34 Conn. App. 557, 563, cert. denied, 230 Conn. 912,645 A.2d 1017 (1994). It must be recognized that Washburn did not address the double jeopardy issue by an stretch of the imagination.
Although Fox argues that the legislative intent indicates that the statute exacts punishment and is punitive in nature, the opposite result, namely, a non-punishment position, has been advanced by the Appellate Courts that have examined the application of the Kurth Ranch decision to the double jeopardy clause challenges to OUI administrative suspensions and subsequent criminal prosecutions. See, e.g., State v. Zerkel, DN. A-5773, 1995 WL 444826 at 5-11 (Alaska Ct.App., July 28, 1995) (citing cases from several jurisdictions; "[f]rom the above authorities, it is clear that administrative suspension or revocation of a driver's license has traditionally been viewed, not as punishment for a driver's criminal offenses or traffic violations, but as remedial action prompted by the need to protect the public by removing dangerous drivers from the roads"); State v. Hanson, 532 N.W.2d 598, 602 (Minn.Ct.App. 1995) ("The question certified by the trial court in Hanson, asking whether the implied consent driver's license revocation is `punishment' for purposes of the Double Jeopardy Clause, is answered in the negative"); State v. Savard, 659 A.2d 1265, 1267-68
(Me. 1995) (finding that the administrative suspension imposed by Maine's statutory scheme was not punitive; "[a]lthough we acknowledge that any suspension may have a deterrent effect on the law-abiding public, our analysis does not focus on that perspective. In the eyes of the defendant even remedial sanctions may carry the `sting of punishment.' United States v. Halper, supra, 490 U.S. 447 n. 7"); State v. Young, 3 Neb. App. 539, 552,530 N.W.2d 269, 278 (1995) ("We found no appellate level cases where the Halper holding was discussed with reference to a claim that driver's license revocation constituted a penalty under the Double Jeopardy Clause. . . .[5] The purpose of enacting the license revocation procedure under [the Nebraska statute] was to CT Page 10788 protect the public by getting people with drinking propensities off the road quickly and to deter driving while intoxicated. This civil license revocation is therefore remedial and not a punishment, even though the loss of a driver's license in our society carries a considerable `sting.' We conclude that a criminal prosecution for driving under the influence is not a violation of the Double Jeopardy Clause on the basis that the driver has already been subject to possible revocation of his or her driver's license under [the statute] for the same incident").
Fox argues that since some elected representatives in debating the passage of Sec. 14-227b used the terms "deterrence" and "punishment" in their floor speeches, ipso facto, the purpose of the law is punishment. The language used by the legislators, however, is not controlling. "[T]he fact that the sanction was labeled punitive does not make it so; rather we must make a particularized assessment of what purpose the [alleged] penalty may fairly be said to serve." State v. Walker, supra, 435, citingUnited States v. Halper, supra, 490 U.S. 448. It seems evident, therefore, that the purpose the alleged penalty serves is a remedial one — to protect society from drunk drivers. See alsoState v. Washburn, supra, 566, quoting State v. Stevens,224 Conn. 730, 739 ("`Connecticut's statutory scheme . . . [reflects] an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers'").
The United States Supreme Court has been heard to say that "[r]emedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted. . . . In spite of their comparative severity, such sanctions have been upheld against the contention that they are essentially criminal. . . ."Helvering v. Mitchell, 303 U.S. 391, 399-400, 58 S.Ct. 630,82 L. Ed 917 (1938). A drivers license is a privilege voluntarily granted and, as such, the statutory scheme in this case does not contravene the double jeopardy clause. See State v. Savard, supra, 659 A.2d 1268 ("A licensee has no absolute right of ownership in a motor vehicle operator's license. A licensee's right to use the license is specifically conditioned on observing specified operating standards. The suspension of that privilege merely signifies the failure of the holder to comply with the agreed conditions"); see also State v. Strong, supra, 605 A.2d 513 ("although a license is `an important and valued privilege that cannot be arbitrarily revoked . . .[,] its exercise and enjoyment are contingent upon compliance with the conditions CT Page 10789 which the legislature has imposed'").
While this court is not persuaded by our Appellate Court's dicta in the interpretation of the nonpunitive purposes served by Sec. 14-227b in a case where this issue was not addressed, it is, however, convinced by the apparent unanimity among other Appellate Courts in their application of the Kurth Ranch andHalper decisions to OUI administrative suspensions and the fact that a drivers license is a privilege that is voluntarily granted by the state, this court finds that the character of the initial administrative suspension is not punitive for double jeopardy clause purposes.
Accordingly, the court denies Fox's motion to dismiss.