STATE OF CONNECTICUT *v.* AURELIO GRACIA
(AC 16586)

Lavery, Spear and Daly, Js.

Argued September 17—officially released November 10, 1998

*Gerald M. Gallant,* for the appellant (defendant).

*Lisa Herskowitz,* assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, and *John Kerwin,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1).[1] On appeal, the defendant

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

claims that (1) article second of the constitution of Connecticut precludes the judiciary from exercising jurisdiction in this case, (2) the evidence was insufficient to sustain the conviction, (3) the trial court improperly admitted the defendant's intoxilyzer results, (4) the trial court improperly admitted testimony pertaining to the defendant's production of currency in response to a police officer's request for a driver's license, (5) the results of the roadside sobriety tests were inadmissible without expert testimony and (6) the defendant did not knowingly and intelligently waive his *Miranda* rights. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 11:30 p.m. on April 12, 1996, a passing motorist, Kevin Scanlon, found the defendant alone and asleep in the driver's seat of his truck. The defendant's truck was located on Commerce Drive in the left lane of traffic, near the intersection with Huntington Street in Shelton. Scanlon found the truck's engine running with the headlights and taillights illuminated, the right turn signal flashing and the radio playing loudly.

Scanlon approached the truck and attempted to awaken the defendant. The defendant's eyes were closed, his head was tilted downward toward the floor and his feet were under the steering wheel. The defendant was leaning against the driver side door with his head against the window. Unable to awaken the defendant, Scanlon went to summon the police. When he returned, Scanlon observed that the vehicle and the defendant were in the same positions that they had been in when he had left.

Scanlon tried again, unsuccessfully, to awaken the defendant. Looking inside the truck, Scanlon observed that the keys were in the ignition, the gearshift was in

the drive position, and the heater and the radio were on. Scanlon moved the gearshift to park.

Officer Kevin Ahearn of the Shelton police department arrived at approximately 11:50 p.m., spoke briefly with Scanlon and then attempted to awaken the defendant. Ahearn shook and yelled at the defendant for approximately five minutes before the defendant woke up. Ahearn then inquired whether the defendant was ill or needed assistance. The defendant replied that he did not. Ahearn reported that the defendant's eyes appeared glassy and bloodshot, and that he detected an odor of alcohol.

When asked to produce his operator's license, the defendant removed a $20 bill from his wallet and gave it to Ahearn without saying anything. Ahearn retained the bill as evidence.[2] The defendant's license was later retrieved from his wallet at the police station. The defendant was then asked to exit the truck. The defendant responded by suggesting that Ahearn must be "kidding" and that he should be allowed to go home. He then exited the vehicle and, as he did, fell forward, was unsteady, had to lean against the truck to maintain his balance and spoke in a slightly slurred, loud and boisterous manner. Two field sobriety tests were then conducted. On the basis of his performance, the defendant was arrested on a charge of operating a motor vehicle while under the influence of intoxicating liquor pursuant to § 14-227a and was taken to the police station.

At the police station, the defendant was advised of his *Miranda* rights. When asked if he understood them, the defendant stared at Ahearn and refused to sign the notification of rights form. The defendant was then advised of Connecticut's implied consent law, General Statutes § 14-227b, and given the opportunity to contact an attorney. The defendant contacted his wife and then

---

[2] The defendant was not charged with bribery.

told the police that she was going to contact an attorney.[3] Several minutes later, the defendant contacted his wife again and informed police that she was trying to contact "Pilsky."[4] Police waited a few more minutes and then administered the first of two intoxilyzer tests.

The first test, conducted at 12:56 a.m., resulted in a blood alcohol reading of 0.191 percent. The second, conducted at 1:32 a.m., resulted in a reading of 0.182 percent. Both readings were above the legal limit of 0.1 percent. The defendant was then asked a series of questions. During that time, he exhibited an indignant demeanor, slurred speech, and his eyes were red and glassy.

The defendant was originally charged with operating a motor vehicle while under the influence of intoxicating liquor pursuant to § 14-227a. After a motor vehicle license suspension hearing pursuant to § 14-227b, the state filed a two count substitute information charging the defendant in the first count with a violation of § 14-227a (a) (1) and in the second count with a violation of § 14-227a (a) (2). The jury convicted the defendant on the first count and acquitted him on the second. This appeal followed.

I

The defendant first claims that the judiciary is precluded from exercising jurisdiction in this case. Specifically, he argues that the trial court's suspension of his license, pursuant to § 14-227a (h),[5] violated the separa-

---

[3] During the telephone call, the defendant was heard to say, "They got me here. I'm at the police station. Call Pilsky."

[4] Pilsky is taken to be the lawyer the defendant wanted his wife to contact.

[5] General Statutes § 14-227a (h) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation, (A) be fined not less than five hundred dollars nor more than one thousand dollars and (B) be (i) imprisoned not more than six months, forty-eight consecutive hours of which may not be suspended or reduced in any manner or (ii) imprisoned not more than six months . . .

tion of powers provision of article second[6] of the constitution of Connecticut. We disagree.

"A party challenging the constitutionality of a statute bears the heavy burden of establishing its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality and, when interpreting a statute, will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent." (Citations omitted.) *State* v. *Campbell*, 224 Conn. 168, 176, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

Our Supreme Court has previously recognized that the powers of the three separate governmental branches inherently overlap, covering acts that are common to more than one branch. See *University of Connecticut Chapter, AAUP* v. *Governor*, 200 Conn. 386, 394, 512 A.2d 152 (1986), citing *State* v. *Clemente*, 166 Conn. 501, 510, 353 A.2d 723 (1974). Consequently, the court has consistently held that the separation of powers doctrine cannot be rigidly applied. *Bartholomew* v. *Schweizer*, 217 Conn. 671, 676, 587 A.2d 1014 (1991); *University of Connecticut Chapter, AAUP* v. *Governor*, supra, 394; *State* v. *Darden*, 171 Conn. 677, 679, 372 A.2d 99 (1976); *Adams* v. *Rubinow*, 157 Conn. 150, 155, 251 A.2d 49 (1968).

and (C) have his motor vehicle operator's license or nonresident operating privilege suspended for one year . . . ."

[6] Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. The legislative department may delegate regulatory authority to the executive department; except that any administrative regulation of any agency of the executive department may be disapproved by the general assembly or a committee thereof in such manner as shall by law be prescribed."

A separation of powers challenge will succeed if the statute "(1) confers on one branch of government the duties which belong exclusively to another branch . . . or (2) if it confers the duties of one branch of government on another branch which duties significantly interfere with the orderly performance of the latter's essential functions." (Citation omitted.) *University of Connecticut Chapter, AAUP* v. *Governor*, supra, 200 Conn. 394–95.

Here, the defendant contends that § 14-227a (h)[7] is unconstitutional because it grants to the judicial branch jurisdiction over subject matter that is already within the exclusive purview of the executive branch. Specifically, he contends that under §§ 14-227a (h) and 14-227b (h)[8] the department of motor vehicles, which is part of the executive branch, and the judiciary are both empowered to suspend operator licenses with respect to the same incident of conduct.

We have previously recognized, however, that "[t]he legislative scheme [of §§ 14-227a and 14-227b] establishes two separate and distinct proceedings. The administrative suspension of an operator's license is under the jurisdiction of the department of motor vehicles and the prosecution of the underlying offense of driving while intoxicated falls within the jurisdiction of the criminal justice system." *State* v. *Washburn*, 34 Conn. App. 557, 564 n.12, 642 A.2d 70, cert. denied, 230 Conn. 912, 645 A.2d 1017 (1994); see also *State* v. *Hickam*, 235 Conn. 614, 622, 668 A.2d 1321, cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996);

---

[7] See footnote 5.

[8] General Statutes § 14-227b (h) provides in relevant part: "The commissioner shall suspend the operator's license . . . and revoke the temporary operator's license . . . for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight . . . ."

*Marshall* v. *DelPonte*, 27 Conn. App. 346, 351, 606 A.2d 716 (1992). In *Hickam,* our Supreme Court concluded that an administrative suspension of an operator's license does not bar criminal prosecution for an alleged violation of § 14-227a (a). *State* v. *Hickam,* supra, 628. Furthermore, we have previously stated that it is "beyond doubt" that the trial court has jurisdiction to decide drunken driving cases. See *State* v. *Sitka,* 11 Conn. App. 342, 346, 527 A.2d 265 (1987).

It is clear that the legislative scheme of §§ 14-227a and 14-227b intended two separate and distinct proceedings, each under the jurisdiction of a different governmental branch. Moreover, there is no evidence whatsoever that the suspension of drivers' licenses pursuant to § 14-227a (h) "significantly interfere[s] with the orderly performance of the [court's] essential functions." *University of Connecticut Chapter, AAUP* v. *Governor,* supra, 200 Conn. 394–95. We conclude that the defendant's claim is without merit. The trial court's suspension of his license, pursuant to § 14-227a (h), does not violate the separation of powers provision of the constitution of Connecticut. Accordingly, the trial court properly exercised jurisdiction in this matter.

## II

The defendant next claims that the evidence presented at trial was insufficient to support his conviction of operating a motor vehicle while under the influence of intoxicating liquor. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to sustaining the jury's verdict. See *State* v. *Salz,* 226 Conn. 20, 30–31, 627 A.2d 862 (1993). Accordingly, we inquire "whether there is a reasonable view of the evidence that supports the jury's verdict of guilty"; *State* v. *Sivri,* 231 Conn. 115, 134, 646 A.2d 169 (1994); and not "whether there is a reasonable view of the evidence

that would support a reasonable hypothesis of innocence." Id. "Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 256, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996), quoting *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

Our decision in *State* v. *Ducatt*, 22 Conn. App. 88, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990), addressed the issue of what constitutes operation of a motor vehicle within the meaning of § 14-227a (a) (1). We concluded that an individual "operates a motor vehicle within the meaning of General Statutes § 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not." *State* v. *Ducatt*, supra, 93. The statute does not require that intent to move the vehicle be established. Id.

Here, the defendant argued that no jury reasonably could have found that his vehicle was operable. The defendant argues that *State* v. *Englehart*, 158 Conn. 117, 256 A.2d 231 (1969), which is factually similar, is not controlling. In *Englehart*, the defendant was found by police slumped over the steering wheel of an automobile unconscious and intoxicated. The vehicle was located in the center of the roadway with its taillights and headlights illuminated, the key was in the ignition

in the on position and the gearshift was in drive, although the engine was not running. Police later drove the car down the road and parked it. On these facts, our Supreme Court held that "[t]here can be no reasonable doubt that, in order to get to the spot where it was found, the car had to be driven, towed or pushed there. Since the car was found to be in good operating condition and since there were no facts indicating that it had been towed or pushed, there was no reasonable basis for an inference that it had not been operated by someone." Id., 122. The reasoning in *Englehart* applies to the facts in the present case as well.

In the present case, while it is undisputed that the police did not move the vehicle, as was the case in *Englehart*, the defendant's vehicle was found in similar circumstances. Specifically, the defendant was found alone and asleep in the driver's seat with his feet under the steering wheel. The vehicle was stopped in the left lane of traffic, near an intersection, with its engine running and gearshift in drive. The right turn signal was flashing, the taillights and headlights were illuminated, and the heater and radio were also on. These facts clearly indicate that the vehicle was operable at the time it was found. Because there were no facts to suggest that the vehicle had been towed or pushed, and because it appeared to be operational, there was a reasonable basis for the inference that the vehicle had been operated by the defendant.

Viewing this evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant was driving while intoxicated and fell asleep on Commerce Drive, where he was found.[9]

---

[9] The defendant asserts two scenarios consistent with his innocence. In his brief, the defendant argues that (1) someone else drove the vehicle to the scene and left, leaving the defendant—originally a passenger—behind the wheel as he slumped over in his sleep, and (2) a passerby may have

## III

The defendant next claims that the trial court improperly admitted the intoxilyzer results and that such an improper admission requires the reversal of the judgment of conviction.[10] We disagree.

Specifically, the defendant contends that General Statutes (Rev. to 1995) § 14-227a (d), as amended by Public Acts 1995, No. 95-314, § 1, precluded the trial court from admitting the intoxilyzer results with respect to the first count of the information because he did not request that the results be admitted[11] and, consequently, the judgment of conviction must be reversed under our holding in *State* v. *Cooper*, 38 Conn. App. 661, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995). The defendant, however, overlooks two critical points.

First, as in *Cooper*, the defendant in the present case was also charged with the violation of both subdivisions of § 14-227a (a). Consequently, here, as in *Cooper*, the intoxilyzer results are admissible without the defendant's request and, in fact, are necessary to prove a violation of § 14-227a (a) (2), pursuant to subsection (c).[12] Second, unlike in *Cooper*, the trial court properly

---

engaged the ignition, lights, and heater to provide warmth to the defendant, who appeared to need medical assistance. We need not examine these hypotheses. As we stated, we inquire "whether there is a reasonable view of the evidence that supports the jury's verdict of guilty"; *State* v. *Sivri*, supra, 231 Conn. 134; and not "whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence." Id.

[10] The claim was not preserved at trial, but we review it as a claim of plain error that the statute was violated.

[11] General Statutes (Rev. to 1995) § 14-227a (d), as amended by Public Acts 1995, No. 95-314, § 1, provides in relevant part: "In any prosecution for a violation of subdivision (1) of subsection (a) of this section, reliable evidence respecting the amount of alcohol in the defendant's blood . . . at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood, breath . . . otherwise admissible under subsection (c) of this section, shall be admissible only at the request of the defendant."

[12] General Statutes § 14-227a (c) provides in relevant part: "Except as provided in subsection (d) of this section, in any criminal prosecution for

instructed the jury concerning the use of the chemical evidence and issued an appropriate limiting instruction. Here, the trial court instructed the jury that with regard to count one charging the defendant with violating § 14-227a (a) (1), the intoxilyzer results could not be considered. Additionally, with regard to the second count, charging a violation of § 14-227a (a) (2), the jury was advised that the defendant could not be convicted on that count unless the test results were found to be accurate and reliable.

In *Cooper*, the trial court gave an appropriate instruction as to the § 14-227a (a) (2) charge, but improperly instructed the jury that it could consider the blood alcohol test results, in addition to other evidence, when determining whether to convict the defendant of violating § 14-227a (a) (1). Id., 671. In so doing, the trial court permitted the jury to consider the chemical evidence in determining the defendant's guilt under § 14-227a (a) (1) in direct violation of the statute. Id., 673. No such problem exists here.

Accordingly, we conclude that there was no plain error and that the intoxilyzer results were properly admitted.

### IV

The defendant next claims that the trial court improperly admitted testimony pertaining to his production of a $20 bill in response to the police officer's request for his driver's license because the evidence was more prejudicial than probative.

Trial courts have wide discretion with regard to evidentiary issues, and their rulings will be reversed only if there has been an abuse of discretion or a manifest

violation of subsection (a) or (b) of this section, evidence respecting the amount of alcohol or drug in the defendant's blood . . . at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath . . . shall be admissible and competent . . . ."

injustice appears to have occurred. *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993). Every reasonable presumption will be made in favor of upholding the trial court's ruling, and it will be overturned only for a manifest abuse of discretion. *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994). Accordingly, we must determine whether the prejudicial effect of the testimony outweighed its probative value.

There are four situations where prejudice to the defendant could outweigh the probative value of evidence: "(1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). The defendant's sole claim regarding the $20 bill is that the testimony falls within the first situation because it may have suggested to the jury that he attempted to bribe the police officer.

It was undisputed that the defendant's production of a $20 bill instead of his license was highly probative of his level of impairment and ability to operate a motor vehicle safely. While the defendant contends that the testimony concerning his production of the currency was prejudicial because it was suggestive of an attempted bribe, the state never charged him with bribery.

Alternatively, even if the trial court improperly admitted the testimony, we conclude that any error was harmless. The defendant has not proven that harm resulted from the admission of the testimony. The testimonial evidence concerning the defendant's production of currency was used to demonstrate that he was so inebri-

ated that he was unable to distinguish between money and his license, not as evidence of an attempted bribe. Furthermore, the evidence already admitted was indicative of intoxication—difficulty maintaining balance, slurred speech, glassy and bloodshot eyes, and the odor of alcohol on the defendant's breath. We conclude that it is unlikely that the jury would infer from the facts that bribery was committed, thereby prejudicing the defendant. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the testimony pertaining to the $20 bill.

V

The defendant next claims that the trial court improperly admitted evidence concerning the field sobriety tests. He contends that field sobriety tests are scientific evidence that require expert testimony prior to their admission into evidence.

A

Before we discuss whether field sobriety tests constitute scientific evidence, we must first address the defendant's contention that *Miranda* warnings were required prior to the administration of those tests.

The United States Supreme Court has held that questioning at the scene and conducting field sobriety tests does not involve custody for purposes of *Miranda*. See *Pennsylvania* v. *Bruder*, 488 U.S. 9, 11, 109 S. Ct. 205, 102 L. Ed. 2d 172 (1988). Indeed, we have noted that our case law presumes that such testing is "incident to the initial stop, based on the officer's reasonable suspicion, rather than on the subsequent arrest." *State* v. *Lamme*, 19 Conn. App. 594, 601, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). We have concluded that such roadside testing and questioning based on "a reasonable, articulable suspicion in the absence

of probable cause is 'clearly warranted' within the meaning of the Connecticut constitution." Id.

Accordingly, we conclude that the defendant was not required to be advised of his *Miranda* rights prior to being administered the field sobriety tests.

### B

We now address whether field sobriety tests constitute scientific evidence. Prior to our Supreme Court's decision in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), Connecticut courts used the test outlined in *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923), for determining the admissibility of scientific evidence. While the events at issue occurred prior to the *Porter* decision, we conclude that the *Frye* test is inapplicable to the field sobriety tests used in this case.

The *Frye* test was found to be appropriate when the "nature of the scientific evidence had the 'potential to mislead lay jurors awed by an aura of mystic infallibility surrounding scientific techniques, experts and the fancy devices employed.'" *State* v. *Borrelli*, 227 Conn. 153, 164, 629 A.2d 1105 (1993), quoting *State* v. *Hasan*, 205 Conn. 485, 490, 534 A.2d 877 (1987). Satisfaction of the *Frye* test, however, was not required in all cases. See *State* v. *Borrelli*, supra, 164. Satisfying the *Frye* test is not required in cases where " 'the jury is in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge. . . . Furthermore, where understanding of the method is accessible to the jury, and not dependent on familiarity with highly technical or obscure scientific theories, the expert's qualifications, and the logical bases of his opinions and conclusions can be effectively challenged by cross-examination and rebuttal evidence.'" Id., quoting *State* v. *Hasan*, supra, 491. Such a situation exists in this case.

The field sobriety tests administered here assessed the defendant's balance, coordination and ability to follow directions. The tests were neither highly technical, nor did they require special skills or knowledge in order to be understood.[13] As we previously stated in *State* v. *Merritt*, 36 Conn. App. 76, 90–91, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995), such field sobriety tests, unlike the horizontal gaze nystagmus test, are within the common knowledge of lay jurors.[14] In the present case, the trial court admitted evidence of the field sobriety tests but limited the evidence to observations of the defendant's behavior made by Ahearn. Additionally, the court instructed the jury that the roadside sobriety tests were not scientific evidence, and that it should consider the observations made during the tests and use its common experience in determining whether the defendant was intoxicated.

As we have discussed previously, trial court rulings concerning evidentiary issues will be reversed only if there has been an abuse of discretion or a manifest injustice appears to have occurred. See *State* v. *Robinson*, supra, 227 Conn. 732. Accordingly, because the field sobriety tests did not require expert testimony as a precondition of admission, we conclude that the trial court did not abuse its discretion by admitting evidence concerning those tests.

## VI

The defendant's final claim is that the trial court improperly denied his motion to suppress statements

[13] Two tests were conducted: (1) the one-legged stand and (2) the walk and turn. The first requires that a person raise one leg six inches off the ground, hold both hands at the sides and count to thirty by "one thousands." The second test requires a person to take nine steps forward, touching heel to toe, and then, keeping one foot on the ground, turn around and repeat the process back to the point of origin while counting the steps aloud.

[14] In *Merritt*, the defendant was subjected to the one-legged stand, walk and turn, and horizontal gaze nystagmus tests. *State* v. *Merritt*, supra, 36 Conn. App. 79 (horizontal gaze nystagmus test held to require *Frye* analysis prior to admission of evidence concerning test or its results).

he made in response to a custodial interrogation by the police after he was advised of his *Miranda* rights. The defendant contends that he was intoxicated, and could not knowingly and intelligently waive his *Miranda* rights.

"To be valid, a waiver must be voluntary, knowing and intelligent." (Internal quotation marks omitted.) *State* v. *Smith*, 42 Conn. App. 41, 46, 680 A.2d 1340 (1996), quoting *State* v. *Stanley*, 223 Conn. 674, 686, 613 A.2d 788 (1992). The state must establish, by a preponderance of the evidence, that the defendant knowingly and intelligently waived his *Miranda* rights. See *State* v. *Santiago*, 245 Conn. 301, 320, 715 A.2d 1 (1998); *State* v. *Barrett*, 205 Conn. 437, 449, 534 A.2d 219 (1987). In reviewing the validity of a waiver, "we look, as did the trial court, to the totality of the circumstances of the claimed waiver." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 320; *State* v. *Madera*, 210 Conn. 22, 49, 554 A.2d 263 (1989). The trial court's findings will be reversed only if they are clearly erroneous. *State* v. *Smith*, supra, 47.

After reviewing the record, we conclude that on the basis of the defendant's conversations with the police and responses to questions posed by them, the state established a knowing and voluntary waiver.

The judgment is affirmed.

In this opinion the other judges concurred.