## STATE OF CONNECTICUT *v.* WENDY R. HICKAM
### (15256)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued September 19—decision released December 26, 1995

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *Kevin Kane,* state's attorney, and *Paul Narducci,* deputy assistant state's attorney, for the appellant (state).

*Edward E. Moukawsher,* for the appellee (defendant).

*Richard Blumenthal*, attorney general, *Aaron S. Bayer*, deputy attorney general, and *Gregory T. D'Auria*, assistant attorney general, filed a brief for the attorney general as amicus curiae.

CALLAHAN, J. The sole issue in this appeal taken by the state[1] is whether the double jeopardy clause of the fifth amendment to the United States constitution prohibited the criminal prosecution of the defendant, Wendy R. Hickam, for operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a),[2] after her motor vehicle operator's license had been suspended pursuant to General Statutes § 14-227b[3] for the same conduct. The state

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes § 14-227a provides in relevant part: "Operation while under the influence of liquor or drug or while impaired by liquor. (a) Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[3] General Statutes § 14-227b provides in relevant part: "Implied consent to test. Suspension of license for refusing to submit to test or having elevated blood alcohol content. Hearing. (a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(c) If the person arrested refuses to submit to such test or analysis or submits to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight, the police officer, acting on behalf of the commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license or, if such person is a nonresi-

appealed from the judgment of the trial court dismissing the criminal charges against the defendant on double jeopardy grounds. The trial court concluded that the administrative suspension of the defendant's license pursuant to § 14-227b embodied an element of punishment that barred a subsequent criminal prosecution

dent, suspend the nonresident operating privilege of such person, for a twenty-four-hour period and shall issue a temporary operator's license or nonresident operating privilege to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the department of motor vehicles within three business days. The report shall be made on a form approved by the commissioner of motor vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for manslaughter in the second degree with a motor vehicle or assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so or that such person submitted to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the department of motor vehicles not later than seven days after the date of mailing of such suspension notice."

pursuant to § 14-227a as violative of the double jeopardy clause of the fifth amendment to the United States constitution.[4] We reverse the judgment of the trial court.

The relevant facts are undisputed. On December 16, 1994, the defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a).[5] Following the defendant's arrest, the commissioner of motor vehicles suspended her motor vehicle operator's license for a period of ninety days pursuant to § 14-227b (h) (1) (A).[6] Prior to the defendant's trial for allegedly operating a motor vehicle while under the influence in violation of § 14-227a (a), she moved to dismiss that charge, claiming that the ninety day suspension of her license was punishment and that any further prosecution or punishment was precluded by the double jeopardy clause of the fifth amendment. The trial court granted the defendant's motion, concluding that the government imposed suspension had a deterrent purpose or effect and constituted punishment that barred any criminal prosecution for the same offense as violative of the double jeopardy clause. This appeal followed.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeop-

---

[4] The fifth amendment to the United States constitution is made applicable to the states by the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 793–96, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

[5] The defendant was also arrested for failure to drive on the right in violation of General Statutes § 14-230 (a).

[6] General Statutes § 14-227b (h) provides in relevant part: "The commissioner shall suspend the operator's license . . . and revoke the temporary operator's license . . . for a period of: (1) (A) Ninety days, if such person submitted to a test or analysis and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight . . . ."

ardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). The third of these protections is at issue in the present case. We must determine, therefore, whether the administrative suspension of the defendant's operator's license constitutes punishment that presents an impediment to her prosecution pursuant to § 14-227a (a).

The defendant relies principally on *United States* v. *Halper*, 490 U.S. 435, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), to support her claim that the trial court correctly concluded that the suspension of her motor vehicle operator's license barred further prosecution or punishment for her alleged violation of § 14-227a (a). In *Halper*, the defendant was convicted of sixty-five separate violations of the federal criminal false claims statute, 18 U.S.C. § 287. Each violation involved a billing to medicare for $12 for reimbursement for medical services worth only $3. The actual damage to the government as a result of the defendant's scheme was $585. Upon his conviction of the criminal violations, the defendant was sentenced to two years imprisonment and fined $5000. Subsequently, the government filed a separate civil action against the defendant in an attempt to recover a $2000 penalty for each violation as authorized by the applicable statute. Thus, the government sought to collect $130,000 from the defendant. The United States District Court refused to impose most of the additional penalties against the defendant, concluding that the requested amounts bore no rational relationship to the government's losses or costs, and that the assessment of the full amount would be an additional punishment that would violate the double jeopardy clause by punishing Halper a second time for the same

offense. *United States* v. *Halper*, supra, 439. The government appealed directly to the United States Supreme Court pursuant to 28 U.S.C. § 1252. The narrow issue presented to the court was whether the attempted imposition of the civil fines against Halper by the government, following his criminal prosecution and punishment for the same underlying misconduct, violated the double jeopardy clause. Id., 447–50.

The court determined that the imposition of the full amount of the sought after monetary penalties would constitute punishment. It explicitly held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution." (Emphasis added.) Id., 448–49. The court recognized the difficulty in conducting this inquiry and indicated that a violation of the double jeopardy clause "can be identified only by assessing the character of the actual sanction imposed on the individual by the machinery of the state." Id., 447.

In holding that the civil penalty authorized by the statute was so disproportionate to the offense as to have violated the constitutional prohibition against multiple punishments, the court announced that this is "a rule for the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." Id., 449. The court then remanded the case to the trial court in order to allow the government an opportunity to demonstrate its losses and costs because it had not previously challenged the assessment of damages. The government rather had chosen to litigate only the comprehensive double jeopardy issue that the Supreme Court decided. Id.

The defendant claims that *Halper* states and stands for the proposition that a civil sanction is punishment unless it can "fairly be said *solely* to serve a remedial purpose . . . ."[7] (Emphasis added.) Id., 448. This language, however, is mere dicta and is inconsistent with *Halper*'s explicit holding. It was, nevertheless, the language upon which the trial court focused in concluding that the suspension of the defendant's operator's license was punishment that raised a double jeopardy bar. If the above quoted dicta from *Halper* were adhered to literally and in isolation as the proper standard by which to evaluate an administrative sanction, any such sanction that exhibited even a minuscule deterrent or retributive purpose would have to be denominated punishment for double jeopardy purposes.

---

[7] The defendant also relies on *Austin* v. *United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993), to support her claim that a sanction must be *solely* remedial for it to avoid being denominated punishment for purposes of the double jeopardy clause. In *Austin*, the court held that the civil forfeiture of a defendant's property following his conviction and sentencing on drug charges constituted punishment and, therefore, was prohibited by the excessive fines clause of the eighth amendment. Id., 2812. The court reasoned that because the civil forfeiture did not serve solely a remedial purpose, it was subject to the limitations of the eighth amendment. Id.

The defendant's reliance on *Austin*, however, is misplaced. First, *Austin* did not deal with whether the forfeiture constituted a multiple punishment for purposes of the double jeopardy clause, but focused instead on whether the forfeiture was excessive for purposes of the excessive fines clause. Id. Second, the court exhaustively analyzed the historical underpinnings of civil forfeiture, and determined that the traditional view of civil forfeiture as punishment combined with an obvious deterrent and retributive legislative intent, led to the conclusion that the forfeiture at issue could only be properly characterized as punishment. Id. Third, in a more recent case involving a double jeopardy analysis of whether a tax could properly be characterized as punishment; *Dept. of Revenue of Montana* v. *Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994); the court referred to the explicit holding of *Halper* and held that the tax statute was fairly characterized as punishment. Id., 777. The court accepted that the tax served to deter, but noted that such deterrence does not in and of itself automatically cause a tax to be characterized as a punishment. Id., 776–77. The court focused on various punitive factors of the tax that outweighed, under the particular circumstances of that case, any remedial purpose. Id., 777.

As quoted earlier, the explicit holding of *United States* v. *Halper*, supra, 448–49, is: "We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution." (Emphasis added.) We cannot reconcile *Halper*'s explicit holding with the language relied upon by the trial court and the defendant in this case. The majority of courts that have addressed the issue of whether the imposition of a civil sanction constitutes punishment for purposes of the double jeopardy clause, however, have applied *Halper*'s explicit holding, and have rejected the notion that *Halper* intended to characterize as punishment all civil or administrative sanctions that have any deterrent effect. See, e.g., *Dept. of Revenue of Montana* v. *Kurth Ranch*, 511 U.S. 767, 778–79, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994); *Garrity* v. *Fiedler*, 850 F. Sup. 777, 778–79 (E.D. Wis. 1994); *State* v. *Funke*, 531 N.W.2d 124, 126–27 (Iowa 1995); *State* v. *Savard*, 659 A.2d 1265, 1268 (Me. 1995); *State* v. *Strong*, 158 Vt. 56, 61–62, 605 A.2d 510 (1992). The majority of courts have also concluded that administrative sanctions that have the remedial purpose of advancing public safety interests do not constitute punishment for purposes of double jeopardy analysis. See, e.g., *United States* v. *Hudson*, 14 F.3d 536, 542 (10th Cir. 1994) (administrative order barring defendants from future banking activities not bar to subsequent prosecution for related criminal offense); *United States* v. *Furlett*, 974 F.2d 839, 844–45 (7th Cir. 1992) (administrative ban on commodities trading not bar to subsequent criminal prosecution for same underlying misconduct); *Schillerstrom* v. *State*, 180 Ariz. 468, 470–71, 885 P.2d 156 (1994) (criminal prosecution not bar to subsequent administrative revocation of chiropractic license even

though based on same behavior giving rise to prosecution); *Loui* v. *Board of Medical Examiners,* 78 Haw. 21, 25–29, 889 P.2d 705 (1995) (one year suspension from practice of medicine by board of medical examiners following criminal prosecution based on same conduct not barred by double jeopardy prohibition against multiple punishments).

Finally, most courts that have spoken directly to the issue of whether an administrative license suspension following an arrest for driving while intoxicated raises a double jeopardy bar to prosecution have consistently relied upon *Halper*'s explicit holding and have determined that if a license suspension furthers the legitimate remedial goal of public safety, it is not punishment in the double jeopardy context even if it has an incidental deterrent or retributive effect. See *Baldwin* v. *Dept. of Motor Vehicles,* 35 Cal. App. 4th 1630, 42 Cal. Rptr. 2d 422, 427–30 (1995) (administrative license suspension based on drunk driving arrest may not be fairly characterized as deterrent or punitive measure and does not bar further prosecution or punishment); *State* v. *Murray,* 644 So. 2d 533, 535 (Fla. App. 1994) (administrative license suspension does not prohibit subsequent criminal prosecution because primary purpose of suspension is public safety as opposed to punishing offender); *State* v. *Higa,* 79 Haw. 1, 897 P.2d 928, 932–34 (1995) (license suspension is remedial in that it protects public by removing potentially dangerous drivers from state roadways and does not bar subsequent criminal prosecution); *State* v. *Funke,* supra, 531 N.W.2d 126–27 (license suspension that principally serves remedial purpose does not implicate double jeopardy protection against multiple punishments and therefore does not bar subsequent criminal prosecution); *Butler* v. *Dept. of Public Safety & Corrections,* 609 So. 2d 790, 797 (La. 1992) (license suspension bears rational relationship to legitimate governmental purpose of promoting public safety

and does not serve as bar to subsequent criminal prosecution); *State* v. *Savard*, supra, 659 A.2d 1268 (license suspension serves as means to ensure public safety and subsequent criminal prosecution based on same conduct is not prohibited by double jeopardy clause); *State* v. *Jones*, 340 Md. 235, 666 A.2d 128 (1995) (administrative license suspension following drunk driving arrest serves remedial purpose and therefore not bar to criminal prosecution); *State* v. *Hanson*, 532 N.W.2d 598, 601–602 (Minn. App. 1995) (ninety day revocation of driver's license fairly characterized as remedial and therefore does not prohibit criminal prosecution); *State* v. *Cassady*, 140 N.H. 46, 662 A.2d 955, 959 (1995) (administrative license suspension following drunk driving arrest does not bar subsequent prosecution because it is not so punitive as to constitute punishment in violation of double jeopardy clause); *Tench* v. *Commonwealth*, 21 Va. App. 200, 462 S.E.2d 922 (1995) (license suspension following drunk driving arrest serves remedial purpose and therefore double jeopardy not bar to subsequent criminal prosecution).

Accordingly, after a review of *Halper* and its interpretation by other jurisdictions, we conclude that *Halper* stands for the proposition that a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect. Conversely, no matter what its label, a sanction or portion thereof that seeks only to punish triggers the protection of the double jeopardy clause.

Having determined that the explicit holding of *Halper*, rather than the test utilized by the trial court, enunciates the proper standard by which to measure a civil or administrative sanction for purposes of the double jeopardy clause, we must determine whether Connecticut's statute mandating an administrative license

suspension under defined circumstances, following an arrest for driving while under the influence, is fairly characterized as remedial. We conclude that the statute is sufficiently remedial so that the administrative suspension does not bar a future prosecution for the same conduct that gave rise to the suspension.

In determining whether a suspension pursuant to § 14-227b is punishment or is remedial for double jeopardy purposes, we need to assess the nature of the administrative sanction imposed upon the individual and the purposes that it serves. *United States* v. *Halper*, supra, 490 U.S. 448. We note at the outset that the question of whether a sanction constitutes punishment is not to be answered from the perspective of the person affected because not infrequently "remedial sanctions carry the sting of punishment." Id., 447 n.7. Consequently, one against whom any administrative action has been taken might well be of the opinion that he or she was indeed being "punished." Additionally, the label that the legislature attaches to the sanction does not control our double jeopardy inquiry because "[i]t is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties." Id., 447.

An examination of the legislative history of § 14-227b reveals that a principal purpose for the enactment of the statute was to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process. Legislators expressed the hope that "this bill [would] save lives . . . [because] anywhere from 20–30 people, Connecticut residents [would] be spared . . . ." 32 H.R. Proc., Pt. 30, 1989 Sess., p. 10,562, remarks of Representative Christopher Burnham. Legislators also hoped that the bill would send a "message that we will not tolerate drunken drivers on our roads . . . [and] the loss of

life and property on our roads as a result of drunken drivers." 32 S. Proc., Pt. 12, 1989 Sess., p. 3979, remarks of Senator Anthony V. Avallone. Other legislators noted that there was a "need to do . . . something stronger than we have done by strictly our criminal laws, something that will use the administrative process in a prompt and sure fashion to make sure that those who drive and drink, don't do so for very long." Id., p. 3985, remarks of Senator Richard Blumenthal. "This bill goes a long way toward restoring . . . the safety that we all expect and deserve in traveling on our roads." Id., p. 3986, remarks of Senator James H. Maloney.

We acknowledge that the legislative history of § 14-227b contains evidence that the ninety day suspension of an operator's license was intended to some extent to furnish a deterrent to driving while under the influence of intoxicating liquor. We note, however, that a deterrent purpose does not automatically mark an administrative action as punitive for double jeopardy purposes. *Dept. of Revenue of Montana* v. *Kurth Ranch*, supra, 511 U.S. 780. Indeed, it is difficult to envision any administrative sanction that does not have some incidental deterrent effect. Accordingly, although various legislators, to some degree, envisioned that the ninety day suspension would deter individuals from driving while intoxicated, a determination that the suspension period primarily serves a remedial purpose is not foreclosed. The legislation's deterrent effect must be considered in conjunction with the equally important public safety purpose that § 14-227b was obviously enacted to serve. On balance, we conclude that any deterrent purpose manifested by the legislative history of § 14-227b is incidental to its overall remedial purpose of removing from the highways those who have exhibited a propensity to drive while under the influence of alcohol.

We conclude that the principal thrust of § 14-227b is to protect the public by temporarily revoking, prior to conviction, the operating privileges of those who have demonstrated a reckless disregard for the safety of others, while at the same time providing procedures to afford due process to those that come within its ambit. While any remedial statute or regulation likely embodies a certain element of deterrence, the remedial purpose of § 14-227b outweighs its incidental deterrent effect. We conclude further that the ninety day suspension period mandated by § 14-227b is not disproportionate to the public safety interest that is served by the expeditious suspension of the operating privileges of an individual who has been administratively found to have operated a motor vehicle with a blood alcohol content of 0.10 of 1 percent or more. An administrative suspension of operating privileges pursuant to § 14-227b is rationally related to the legislature's assessment that public safety on our highways is furthered by the prompt removal from behind the wheel, even if only temporarily, of those individuals who have been arrested for operating under the influence. Succinctly put, the ninety day suspension period is not "so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis." *United States* v. *Halper,* supra, 490 U.S. 443.

The fact that the operating privileges of a driver arrested for operating a motor vehicle while under the influence are allowed to be retained temporarily for a thirty day period does not affect our determination that § 14-227b is remedial. An operator's license is a privilege that the state may not revoke without furnishing the holder of the license due process as required by the fourteenth amendment. *Bell* v. *Burson,* 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971).[8] Consequently,

[8] Contrary to the assertion of the dissent, we do not claim that *Bell* v. *Burson,* supra, 402 U.S. 535, requires a hearing prior to the suspension of

the legislature has simply provided to a driver who has been arrested the opportunity to contest the loss of his or her license, while retaining operating privileges until a final determination on an extended suspension can be made after a hearing. The short period of retention of driving privileges pending a hearing was obviously intended to eliminate any possible due process concerns and does not defeat the statute's remedial purpose of expeditiously removing potentially dangerous drivers from the road for a period of time. *State* v. *Hanson*, supra, 532 N.W.2d 602; see also *State* v. *Stevens*, 224 Conn. 730, 739, 620 A.2d 789 (1993) (Connecticut's statutory scheme reflects "an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers").

Moreover, the legislature's decision to limit to only ninety days the suspension of a driver whose blood alcohol content tested to be 0.10 of 1 percent or more does not vitiate the statute's remedial purpose. While the legislature might have opted for a substantially longer suspension period, we cannot say that its decision not to do so is unreasonable or not rationally related to concerns of public safety, a remedial purpose. "[W]e must defer to the Legislature in determining the remedial action necessary to achieve its goals. See [*United States* v. *Ward*, 448 U.S. 242, 249, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980)]." *State* v. *Strong*, supra, 158 Vt. 61; see *Quinnett* v. *Newman*, 213 Conn. 343, 347, 568 A.2d 786 (1990).[9]

an operator's license. As the dissent notes, the state may satisfy due process concerns by providing a hearing either before or after depriving one of the property interest. In this instance, the legislature has chosen to provide a hearing prior to the suspension.

[9] Additionally, we note the suspension period increases for subsequent violations of § 14-227b, indicating that the legislature was determined to remove from the roadways for longer periods of time those who repeatedly have exhibited a propensity to drive while under the influence. For example, for a second violation, the offender loses his or her operator's license for a period of one year, and for three or more violations, the suspension period increases to two years. General Statutes § 14-227b (h).

In sum, we conclude that the administrative suspension of the defendant's operator's license had a legitimate remedial purpose and does not bar her criminal prosecution for allegedly violating § 14-227a (a).

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion PETERS, C. J., and BORDEN, NORCOTT, KATZ and PALMER, Js., concurred.

BERDON, J., dissenting. The majority's reversal of the trial court's dismissal of the charges of operating under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) subjects the defendant, Wendy Hickam, to double jeopardy. Although deterring persons from operating motor vehicles while under the influence of alcoholic beverages is a laudable objective, it cannot be done through multiple punishments that transgress the double jeopardy clause of the United States constitution. In order to accomplish the underlying commendable purpose of decreasing the incidence of driving while under the influence, the legislature surely can fashion a statutory scheme that does not offend the constitution.

In this case, the issue presented is whether the two sanctions imposed pursuant to General Statutes § 14-227b after the defendant's arrest for operating a vehicle under the influence of intoxicating liquor or drugs—that is, (1) the suspension of her motor vehicle operator's license for twenty-four hours following her arrest and (2) the subsequent suspension of her license for a ninety day period—constitute punishments for purposes of the double jeopardy clause. If either suspension constitutes "punishment," the criminal prosecution of the defendant arising out of the same incident must be dismissed because it would place the defendant in double jeopardy

in violation of the fifth amendment. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

The United States Supreme Court has clearly held that a civil sanction may constitute a punishment for purposes of the double jeopardy clause. *United States* v. *Halper*, 490 U.S. 435, 447–48, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989). "The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads." Id. Thus, the essence and character of a sanction must be examined to determine whether a civil sanction is truly punitive in nature.

Unfortunately, the Supreme Court of the United States has not provided a clear standard to determine whether a civil sanction is a punishment for purposes of the clause. *Dept. of Revenue of Montana* v. *Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994); *Austin* v. *United States*, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993); *United States* v. *Halper*, supra, 490 U.S. 435. In 1989, the court in *Halper* held "that a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. [The court therefore held] that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." (Emphasis added.) *United States* v. *Halper*, supra, 448–49. Four years later, the United States Supreme Court in *Austin*, while referring to the above quoted language

from *Halper*, made it clear that a sanction is punishment if the sanction "serves *in part* to punish . . . ." (Emphasis in original.) *Austin* v. *United States*, supra, 619 n.12. The court further stated that "one need not exclude the *possibility* that [the sanction] serves other purposes to reach [the conclusion that the sanction is a punishment]."[1] (Emphasis added.) Id. Therefore, under *Austin*, a sanction with a punitive component is to be considered "punishment" for double jeopardy analysis.[2] The following year, the Supreme Court of the United States in *Kurth Ranch* again addressed the issue of when a "civil" sanction, in the form of a tax on illegal drugs, may be constitutionally imposed. *Dept. of Revenue of Montana* v. *Kurth Ranch*, supra, 767. At the commencement of its analysis the court stated: "Here, we ask only whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." Id., 778–79. After reviewing several attributes of the tax in question, the court held that the tax was "fairly characterized as punishment . . . ." Id., 784.

A careful analysis of *Halper*, *Austin* and *Kurth Ranch* leads to the conclusion that any sanction which is *sig-*

---

[1] Footnote 7 of the majority opinion provides that *Austin* is not to be utilized in reviewing this case because *Austin* involves a civil forfeiture. Unlike the majority, I have no reason to believe that "punishment" is defined differently under the fifth amendment's double jeopardy clause than it is under the eighth amendment's excessive fines clause. Indeed, *Kurth Ranch*, cites both *Austin* and *Halper* favorably when discussing when a civil sanction is to be deemed a "punishment" for triggering constitutional protection of the double jeopardy clause. *Dept. of Revenue of Montana* v. *Kurth Ranch*, supra, 511 U.S. 778.

[2] Recently, the Tenth Circuit Court of Appeals, in *United States* v. *Hudson*, 14 F.3d 536, 540 (10th Cir. 1994), interpreted the language of *Halper* to mean that "if a particular remedial sanction can only be understood as also serving punitive goals, then the person subjected to the sanction has been punished despite that fact that the sanction is also remedial." The court went on to state: "To conclude otherwise effectively invalidates the Double Jeopardy Clause by allowing multiple punishments for the same conduct merely because the punishments also serve remedial purposes. We therefore must conclude that if a sanction is not exclusively remedial, but rather can only

*nificantly punitive,* although not necessarily predominantly punitive, must be classified as a "punishment." Id., 781; *Austin* v. *United States,* supra, 509 U.S. 621; *United States* v. *Halper,* supra, 490 U.S. 448–49. A sanction should be considered "significantly punitive," if, notwithstanding any remedial purpose, it is punitive in a meaningful way or if the intended purpose of the civil sanction is punitive.

The court today, purporting to follow *Halper,* sets forth a standard that is at odds with that decision.[3] The majority states that any remedial effect, no matter how minuscule, will render a sanction remedial for double jeopardy purposes. Nevertheless, even if we should construe *Halper* in a manner that is most favorable to the state, the double jeopardy clause under those circumstances still requires that the sanction must be one that can "fairly be characterized as remedial" for it to pass constitutional muster. *United States* v. *Halper,* supra, 490 U.S. 448–49. Because the ninety day suspension cannot be "fairly characterized as remedial," this action must be dismissed.

In order to make a point, my analysis under the "fairly characterized as remedial" standard begins with the obvious. The twenty-four hour suspension imposed under § 14-227b is purely remedial because it is "clearly focused on public safety." *State* v. *Washburn,* 34 Conn. App. 557, 564, 642 A.2d 70 (1994). Its manifest purpose is to protect others by prohibiting a person who has just been arrested for driving under the influence from

be explained as also affecting deterrence or retribution, it is punishment for double jeopardy analysis." Id.

[3] The majority states that "we conclude that *Halper* stands for the proposition that a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect. Conversely, no matter what its label, a sanction or portion thereof that *seeks only to punish* triggers the protection of the double jeopardy clause." (Emphasis added.)

operating a vehicle while he or she may still be intoxicated. Id.

The second sanction imposed under § 14-227b—that is, the ninety day suspension—however, lacks such a remedial purpose. Upon arrest, an individual's operator's license is seized and a temporary license is issued. The temporary license is effective twenty-four hours after the arrest and remains valid for up to thirty days, thereby restoring the individual's right to operate a vehicle. The ninety day suspension does not commence until the person has a hearing to determine whether the police officer had probable cause to arrest and other related matters that would justify depriving him of the license. General Statutes § 14-227b (f). Unless the individual waives his right to a hearing, the hearing must occur within thirty days of his arrest. General Statutes § 14-227b (d).

The majority claims that the remedial aspect of § 14-227b is "to protect the public by removing potentially dangerous drivers from the state's roadways with all dispatch compatible with due process." If the ninety day suspension in § 14-227b was truly remedial, the arrestee's right to operate a vehicle would not be restored for the thirty day period.[4] For example, a teacher accused of child abuse would not be allowed to continue teaching while awaiting a hearing, nor would an individual suspected of murder be issued a temporary gun permit. In such situations, the concern for the safety and welfare of others governs and the state's primary reason for taking such precautionary measures are thus remedial even though the individual is deprived of a property right.

[4] Indeed, if the suspension was remedial, the license would not be restored to the person automatically at the end of a fixed period. Rather, the license would be returned only after it was demonstrated that the person's alcohol related driving problem was resolved.

If the ninety day suspension became effective when a person was arrested, then the suspension could arguably be characterized as remedial. Under those circumstances, we could logically conclude that the immediate suspension was necessary to remove from the highways persons who have a problem with alcohol or other drugs and to give those individuals an opportunity to seek professional aid and participate in appropriate driver's education programs. See, e.g., General Statutes § 14-227a (k) (participation in alcohol education and treatment program). Instead, the statutory scheme of § 14-227b puts the person, who has failed a blood alcohol test or refused to submit to one, behind a wheel twenty-four hours after his offense and allows him to continue driving for up to thirty days. This statutory scheme therefore precludes the ninety day suspension from being "fairly characterized as remedial." I agree with the defendant that there "is no correlation between safeguarding the public from an intoxicated driver and removing a person from the road well after his arrest for an arbitrary period. Clearly, the aim [of this statute] is deterrence, a classic goal of punishment."

In fact, Representative John Tiffany posed the following hypothetical when § 14-227b was being considered in the legislature: "What happens if a fellow is driving home on a Friday night. He's stopped and arrested, given one of these temporary licenses, and he's stopped again on Sunday, Sunday night or Monday prior to the time [the permanent suspension] can get through the mail?" 32 H.R. Proc., Pt. 30, 1989 Sess., pp. 10,529–30. In response, Representative Douglas Mintz stated that the individual would simply be prosecuted as a repeat offender. Id., pp. 10,531–32. Representative Tiffany then sought to clarify Representative Mintz's response by stating: "In other words, if he were *stopped three times on his temporary license,* he would get a three time penalty at his first hearing." (Emphasis added.) Id., p.

10,532. Again, this dialogue reflects the fact that the ninety day suspension was not principally intended to serve a remedial purpose.

The court excuses the illogic of designating the sanction, which commences thirty days after arrest, as remedial by declaring that such a period is necessary to protect the due process rights of a defendant in order to give him an opportunity to be heard before his license is suspended.[5] I am pleased that the court is concerned about the defendant's due process rights. This is especially so since a majority of the court, in *State* v. *Lopez*, 235 Conn. 487, 668 A.2d 360 (1995), recently held that a criminal defendant sentenced to an effective prison term of seventeen years did not have a right to a mere hearing before the trial court altered a transcript of the defendant's trial which removed the basis for an issue he raised on appeal. I can only conclude that, in any given case, an individual's due process right to be heard solely depends on which end of the telescope—the narrowing or the magnifying end—the court that day decides to view the issue. Such capriciousness greatly concerns me.

Notwithstanding the court's laudable concern for due process in this case, the United States Supreme Court has consistently held that a flexible approach must be employed in determining what process is due an individual being deprived of a right. L. Tribe, American Constitutional Law (2d Ed. 1988) p. 718. Generally, an individual may not be deprived of his liberty or property until the individual has had the benefit of a hearing. Id., p. 719. In certain circumstances, however, a state

---

[5] The majority incorrectly cites *Bell* v. *Burson*, 402 U.S. 535, 539, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971), for the proposition that an operator's license cannot be suspended until there has been a hearing. Rather, *Bell* holds that due process is satisfied by providing a hearing *either before or after* a deprivation, depending on the circumstances of the case. Id., 542.

may have a valid governmental interest, such as public safety, that necessitates the immediate deprivation of a right without a presuspension hearing, as long as the deprivation is followed by a subsequent hearing within a reasonable time. *Dixon* v. *Love*, 431 U.S. 105, 114, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977) (prompt removal of safety hazards is important governmental interest); *Boddie* v. *Connecticut*, 401 U.S. 371, 379, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) (individual may be deprived of right without prior hearing "where some valid governmental interest is at stake that justifies postponing the hearing until after the event"). Consequently, the majority's concern for due process to justify the thirty day period during which an individual's license is restored is misplaced.

In addition to the statutory scheme, the legislative history also clearly demonstrates that the intent of the legislature in enacting this statute was to punish drunk drivers in an expeditious fashion by utilizing administrative procedures. Although the majority acknowledges that the legislative history "to some extent" supports the defendant's position that § 14-227b was enacted as a punitive measure, that characterization of the history by the court is misleading. In fact, the legislative history indicating that the primary intent in enacting this statute was to punish is overwhelming. One of the first comments made by Representative Richard Tulisano, chairperson of the judiciary committee, regarding this bill was that "[i]t *penalizes* people stronger than anything we have seen here if *punishment* is the answer . . . ." (Emphasis added.) 32 H.R. Proc., supra, p. 10,518. Similar statements, too numerous to put in the body of this dissent, are found throughout the legislative history.[6]

---

[6] The legislative history indicating that § 14-227b is a punishment is as follows: "We have come together to develop a bill that has proven to be an *effective deterrent* to drunk driving . . . ." (Emphasis added.) 32 H.R. Proc., supra, p. 10,522, remarks of Representative Edith Prague. "[T]his amendment

The legislative history cited by the majority in support of its position is merely general statements from our legislators stating that the carnage caused by drunk driving is intolerable. With those statements I agree. Nevertheless, the question remains, did the legislators intend to combat this problem by quickly punishing offending individuals? And the answer to that query is yes; the legislature sought to employ the administrative process as a more expeditious means to punish individuals who drive while under the influence. This point was clearly articulated by then Senator Richard Blumenthal, whom the majority quotes in their opinion. Senator Blumenthal stated that "[this bill will do] . . . something stronger than we have done by strictly our criminal laws, something that will use the administrative

hopefully will act as *a deterrent* to have people realize the consequences of having that one drink too many, and thereby subjecting themselves to the loss of their license for 90 days . . . ." (Emphasis added.) Id., p. 10,523, remarks of Representative Douglas Mintz. "In the past in our law, under the alcohol education program, on a first arrest there was often no *penalty* beyond the fee to enter the program . . . . This, for the first time, puts in a suspension of the license of a first arrest, if that arrest is backed by either a refusal to take the test or a failure of the test . . . . There will be a *meaningful penalty*—a 90 day loss of license." (Emphasis added.) Id., pp. 10,524–25, remarks of Representative Robert Ward. "[T]here are two important things the bill does. One . . . is a 90 day suspension on a first offense, but the second thing . . . is that by setting up an administrative process we can *act quickly* to get somebody's license away from them." (Emphasis added.) Id., p. 10,534, remarks of Representative Robert Farr. "[S]omebody who drinks and drives *ought to be tagged* . . . . This is probably one of the toughest drunk driving per se bills in the United States. . . . *Enough punishment* that you lose your license." (Emphasis added.) Id., pp. 10,546–47, remarks of Representative William Wollenberg. "[R]eceive *some punishment, without conviction* necessarily for drunk driving." (Emphasis added.) Id., p. 10,564, remarks of Representative Richard Tulisano. "[Y]our license may be suspended under certain circumstances, irrespective of the result of the criminal charges." 32 S. Proc., Pt. 12, 1989 Sess., p. 3978, remarks of Senator Anthony Avallone. "[This bill is] . . . *something stronger* than we have done by strictly our criminal laws, something that will use the *administrative process* in a prompt and sure fashion to make sure that those who drive and drink don't do so for very long." (Emphasis added.) Id., pp. 3984–85, remarks of Senator Richard Blumenthal.

process in a prompt and sure fashion to make sure that those who drive and drink don't do so for very long." 32 S. Proc., Pt. 12, 1989 Sess., pp. 3984–85.

Standing alone, there is nothing unconstitutional about punishing individuals by suspending their operator's licenses in order to deter driving while intoxicated. And, indeed, it may be very effective in solving a serious problem. The double jeopardy clause, however, forbids the imposition of a second successive sanction—in this case, a criminal prosecution—for the same offense.

I do not doubt the state's authority and obligation to deter persons from operating vehicles on the highways under conditions that threaten the lives of innocent third parties by revoking an individual's right to operate a vehicle. That authority, however, must be exercised in a manner that does not offend the double jeopardy clause of the United States constitution by meting out successive punishments for the same crime. Nor do I question the state's authority to suspend a license for purely remedial purposes, but that authority must be exercised in a manner in which it could logically be concluded that the sanction was enacted for a remedial purpose.

I conclude that the ninety day suspension period provided in § 14-227b is punitive for double jeopardy purposes and therefore the defendant's prosecution for operating under the influence must be dismissed.

Accordingly, I respectfully dissent.